IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BOBBY L. ROBINSON, JR          §
                               §
          Plaintiff,           §
                               §
v.                             §          CIVIL ACTION NO.   H-09-2497
                               §
MICHAEL J. ASTRUE.             §
COMMISSIONER OF THE SOCIAL     §
SECURITY ADMINISTRATION        §
                               §
          Defendant.           §

## MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING THE DECISION OF THE COMMISSIONER

Before the Court in this social security disability appeal is Plaintiff's Motion for Summary Judgment (Document No. 8) and the Defendant's Response in Opposition (Document No. 12). Having considered Plaintiff's motion, Defendant's response, the administrative record, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is DENIED and the Commissioner's decision is AFFIRMED.

### I. Case Background

Plaintiff Bobby L. Robinson ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Defendant" or "Commissioner") denying Plaintiff's claims for disability insurance benefits under Title II of the Social Security Act ("the Act") and his application for supplemental security income benefits under Title XVI.

A.      **Procedural History**

Plaintiff filed applications for supplemental security income benefits and disability insurance benefits on July 24, 2007, alleging that he became disabled on January 1, 2007, due to schizoaffective disorder, seizures, left arm paralysis, and a head injury (Tr. 94-101, 124). After his applications were denied at the first two levels of administrative review, Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  The ALJ held a hearing on August 11, 2008, in Houston, Texas (Tr. 20).  Plaintiff, represented by an attorney, appeared and testified. A vocational expert also appeared and testified.  Plaintiff was a 43 year old at the time of his alleged onset date (Tr. 23).  He has an 8th grade education and his past relevant work experience was as a telemarketer (Tr. 125, 128).

On January 20, 2009, the ALJ issued a decision in which he found that the Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 10-19). The ALJ analyzed Plaintiff's applications pursuant to the five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). After the Appeals Council denied Plaintiff's request for review on July 22, 2009, thus making the ALJ's decision the final decision of the Commissioner, Plaintiff filed a timely complaint pursuant to 42 U.S.C. § 405(g),

B.  **Factual History**

1.  **Plaintiff's Age, Education, and Work Experience**

Plaintiff was born on August 30, 1963, and was 44 years old at the time of the hearing before the ALJ.  He has an 8th grade education.  (Tr. 23).  His past relevant job experience included work as a telephone solicitor in which he earned as much as $17,000 per year.  (Tr. 103).  He has not worked since May 2007.  He was in prison for carrying a weapon between 1993 through 1999, and went back to prison for violating his probation in 2004.  (Tr. 16).

### 2. Plaintiff's Testimony

At the hearing on August 11, 2008, Plaintiff testified he completed the 8th grade, is right handed, cannot read and write very well, does not have good math skills, is currently not working, worked until May 2007 as a phone solicitor, has been in prison for possession of a weapon in a place where alcohol is issued, and went back to prison for 22 months because of a probation violation, ending in 2006.  (Tr. 23-28).  He testified that his left arm is paralyzed, small changes in temperature bother him a lot, he has had alcohol abuse problems, has been put on medication to help him rest, has not had a drink since May 2007, and is being seen at Casa de Amigos for high blood pressure.  (Tr. 29-33).  He testified that he is living at a group home for the mentally disabled, and thinks he could live outside that group setting if he had the money, is sent to counselors and therapists for group meetings almost every day and has household chores. He also stated that he takes the bus to the doctor, came to this hearing by bus, hears voices, and feels he could not do phone soliciting anymore because he cannot get past the things he hears even when on medication.  (Tr. 34-36).  He testified that prescription medications help fight the symptoms but do not take them completely away.  (Tr. 38).  He also testified that he attempted to go back to telemarketing in 2007 and tried to go back to Service Associates, but they would not hire him back.  (Tr. 39-40).

### 3. Vocational Expert Testimony

After reviewing the file and listening to testimony by Plaintiff and reviewing the medical records, the vocational expert ("VE"), Carolyne B. Fisher, testified that the Plaintiff's previous work as a telemarketer was light in physical demands and semi-skilled with a Specific Vocational Preparation (SVP) of three out of nine.  (Tr. 41).  The VE testified that an individual, while employed as a telemarketer, occasionally encountered: stairs, balancing, and stooping; and

never encountered: ropes, ladders, scaffolding, dangerous machinery, the use of left upper

extremity. (Tr. 41-42). That individual employed as a telemarketer is also able to understand,

remember, and carry out detailed but not complex instructions, make decisions, concentrate for

extended periods, and respond to changes. (Tr. 41). The VE stated that the being a telemarketer

entails very little physical demand, and is semi-skilled. (Tr. 42). Also, the VE testified the

hypothetical individual is able to do his previous work as a telemarketer. (Tr. 42).

## II. <u>Legal Standards</u>

### A.  Standard of Review of Agency Decision

The Court's review of a denial of disability benefits is limited "to determining (1) whether

substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's

decision comports with relevant legal standards." *Jones v. Apfel,* 174 F. 3d 692, 693 (5th Cir.

1999). Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The

findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive." The Act specifically grants the district court the power to enter judgment, upon the

pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner

of Social Security, with or without remanding the case for a rehearing" when not supported by

substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the

record in its entirety to decide whether the decision is supportable, *Simmons v. Harris,* 602 F.2d

1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, nor try the

issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence

preponderates against the [Commissioner's] decision." *Johnson v. Bowen,* 864 F. 2d 340, 343

(5th Cir. 1988*); see also Jones,* 174 F.3d at 693*; Cook v. Heckler,* 750 F2d 391, 392-93 (5th Cir.

1985).  Conflicts in the evidence are for the Commissioner to resolve.  *Anthony v. Sullivan,* 954

F.2d 289, 295 (5th Cir. 1992).

 If the findings of fact contained in the Commissioner's decision are supported by

substantial evidence, they are conclusive, and this court must affirm.  *Selders v. Sullivan,* 914

F.2d 614, 617 (5th Cir. 1990).  Substantial evidence is described as "'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion,'" *Greenspan v. Shahala,* 38

F.3d 232, 236 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971)); it is

"more than a mere scintilla, and less than a preponderance." *Spellman v. Shahala,* 1 F.3d 357,

360 (5th Cir. 1993).  The evidence must create more than "a suspicion of the existence of the fact

to be established, but 'no substantial evidence' will be found only when there is a 'conspicuous

absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler,* 707 F.2d

162, 164 (5th Cir. 1983).

**B.  Standard to Determine Disability**

 In order to obtain disability benefits, a claimant bears the ultimate burden of proving he is

disabled within the meaning of the Act.  *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991).

Specifically, under the legal standard for determining disability, the claimant must prove he is

unable to "engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which … has lasted or can expect to last for a continuous period

of not less than twelve months."  42 U.S.C § 423(d)(1)(a); see also *Greenspan,* 38 F.3d at 236.

The existence of such disability must be demonstrated by "medically acceptable clinical and

laboratory diagnostic findings."  42 U.S.C. §§ 423 (d)(3), (d)(5); see also *Jones v. Heckler,* 702

F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is disabled under this standard, Social Security Act regulations ("regulations") provide that a disability claim should be evaluated according to a sequential five-step process:

(1)    An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

(2)    An individual who does not have a "severe impairment" will not be found to be disabled.

(3)    An individual who meets or equals a Listing will be considered disabled without the consideration of vocational factors

(4)    If an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made

(5)    If an individual's impairment precludes him from performing his past work, or other factors including age, education, past work experience, and residual functional capacity ("RFC") must be considered to determine if other work can be performed.

*Bowling v. Shala,* 36 F.3d 431, 435 (5th Cir. 1994); *see also* 20 C.F.R. §404.1520.  The claimant bears the burden of proof on first four steps of the inquiry, while the Commissioner bears it on the fifth.  *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999); *Brown,* 192 F.3d at 498.  The Commissioner can satisfy this burden either by reliance on the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen,* 810 F.2d 1296, 1304 (5th Cir. 1987).  If the Commissioner satisfies his step-five burden of proof, the burden shifts back to the claimant to prove he cannot perform the work suggested.  *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).  The analysis stops at any point in the process upon a conclusive finding that the claimant is disabled or not disabled.  *Greenspan,* 38 F.3d at 236.

**C.  The ALJ's Decision**

In his formal decision, the ALJ followed the five-step process outlined in the regulations, finding at the first step that the Plaintiff had not engaged in substantial gainful activity since

January 1, 2007, the alleged onset date.  At step two, the ALJ determined that the claimant has

the following severe impairments: psychotic disorder (not otherwise specified), polysubtance

dependence (in partial remission), antisocial personality disorder, chronic low back and neck

pain, and left brachial plexopathy with disuse atrophy.  Next considering step three, the ALJ

determined that the claimant does not have an impairment or combination of impairments in 20

CFR Part 404, Subpart P, Appendix 1 (20 CFR 404. 1525, 404.1526, 416.925 and 416.926).

The ALJ then took into careful consideration the information contained in Plaintiff's

medical records, as well as testimony presented at the hearing, and concluded at step four that

Plaintiff had the residual functional capacity (RFC) to perform the exertional demands of a wide

range of light work, or work which is generally performed while standing/walking frequently

(more or less six-hours in an eight-hour work day) and requires maximum lifting of twenty

pounds occasionally, ten pounds frequently as defined in 20 CFR 404.1567(b) and 416.967(b).

Based on Plaintiff's RFC, the ALJ concluded that Plaintiff is capable of performing his

past work as a telemarketer and this work does not require the performance of work-related

activities precluded by the claimant's residual functional capacity.  Accordingly, the ALJ did not

proceed to step five and found the Plaintiff "not disabled" for a period of disability and disability

insurance benefits, and also "not disabled" for supplemental security income.

### D. Objective Medical Facts

Plaintiff was involved in a motor vehicle accident in 1982 sustaining injuries in his right

eye orbit and left upper extremity.  Claimant reports mental problems since 1993 when he was

serving a sentence in prison and functioned well without meds until about 1996.  The objective

medical evidence shows that his left arm is atrophying due to disuse caused by the car accident

in 1982, and that he suffers from schizoaffective disorder as well as polysubstance dependence (in remission).

### 1. Schizoaffective Disorder and Polysusbtance Abuse

On September 5, 2007, he was diagnosed by his clinical psychologist George Lazar, Ph.D., with psychotic disorder and polysubstance dependence.  (Tr. 221).  Mr. Lazar also gave the claimant a GAF of 55.  (Tr. 221).  On September 6, 2007, Dr. John Anigbogu diagnosed claimant with disuse atrophy of his left arm, polytrauma, and a history of schizophrenia.  (Tr. 224).

On September 24, 2007, John  Ferguson, Ph.D., a state agency reviewing psychologist, noted that the claimant has antisocial personality disorder but is independent in all activities of daily living, has some minimal insight into his mental status, and has average knowledge, attention, concentration, and memory.  (Tr. 232, 235).  The state agency reviewing physician opined that the claimant has a mild restriction in activities of daily living, moderate difficulties in social functioning, mild difficulties with regard to concentration, persistence or pace, and no episodes of decompensation.  (Tr. 235).  Mr. Ferguson also noted that the claimant is able to understand, remember, and carry out detailed but not complex instruction, make decisions, concentrate for extended periods, interact with others, and respond to changes.  (Tr. 249).

### 2. Paralyzed Left Arm and Physical Examinations

Following claimant's car accident in 1982, he lost the use of his left upper extremity. The consultative examination on September 6, 2007 by Dr. John Anigbogu observed the claimant to be well developed, have 5/5 muscle strength, ambulate affectively, but have left brachial plexopathy with disuse atrophy.  (Tr. 224).  The Casa de Amigos Clinic documented his paralyzed left arm and as well his pain in that arm.  (Tr. 288-307).  The Casa de Amigos Clinic

additionally noted that there was no acute abnormality in his left arm, his lungs were clear, poor range of motion in his left shoulder, no soft tissue abnormality in his hips, and the CT scan of his head was normal without any contrast. (Tr. 289-306). Also, September 24, 2007 treatment notes from Memorial Hermann Hospital show a normal physical examination except for a paralyzed left arm. (Tr. 253-256).

### E. Summary of the Parties Arguments

Plaintiff seeks judicial review of the ALJ's decision to deny disability benefits based on three arguments. In his motion for summary judgment, Plaintiff first argues that the Appeals Council of the Social Security Administration, the Defendant, received medical evidence that was contrary to the medical evidence relied upon by the ALJ in making the decision in this case. Plaintiff's second argument is that the Appeals Council did not explain how it evaluated the contrary medical evidence, and that the Appeals Council should have obtained a medical expert regarding whether Plaintiff's condition met a listing. Also, Plaintiff argues that the ALJ made no finding of credibility.

Defendant, on the other hand, contends that the ALJ employed proper legal standards in reviewing the evidence and that the ALJ's decision is supported by substantial evidence. Defendant therefore maintains that the ALJ's decision should be affirmed.

### IV. <u>Analysis</u>

### A. The Appeals Council properly considered Plaintiff's additional evidence.

On February 4, 2009, treating physician Roberta Flores, M.D., completed a physician's statement stating that Plaintiff completely was disabled. (Tr. 372-373). Plaintiff argues that the Appeals Council violated Social Security Ruling (SSR) 96-5p when it did not mention Dr. Flores' statement in its ruling or explain how it evaluated it. (Document 9). SSR 96-5p provides

that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, *2 (S.S.A. 1996). In the "Order of Appeals Council" dated July 22, 2009, the Appeals Council noted that it was making the additional medical evidence a part of the record. (Tr. 4). Dr. Flores' statements were included in that submission. (Tr. 4). Moreover, the Appeals Council specifically notified Plaintiff in its "Notice of Appeals Council Action" that it had considered the additional evidence. (Tr. 1, 4). The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner. *Sims v. Apfel,* 530 U.S. 103, 112 (2000). Therefore, since the Appeals Council properly mentioned and considered Dr. Flores' statement, it properly followed SSR 96-5p.

Dr. Flores' statement is not entitled to controlling weight and would not have changed the ALJ's decision. A treating physician's opinion that a claimant is "disabled" or "unable to work" are not the type of doctor's opinions that are ever given controlling weight or even "special significance." *Frank v. Barnhart*, 326 F. 3d. 618, 620 (5th Cir. 2003). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). However, the ALJ ultimately may give less weight to the medical opinion of any physician when his statements are conclusory, unsupported or otherwise incredible. *Greenspan v. Shahala*, 38 F.3d 232, 237 (5th Cir. 1994). Additionally, the ALJ is not required to explicitly discuss each medical entry and state why he rejected or accepted each conclusion contain therein. *Falco v. Shahala*, 27 F.3d 160, 164.

Moreover, Dr. Flores' statement pertains to the period after the ALJ's decision. Medical records from the relevant time period show Plaintiff is not disabled. Also, given the claimant's allegations of totally disabling symptoms, one might expect to see more evidence in records displaying this.

### B.  The ALJ did not need to obtain a medical expert

To obtain a disability determination at step three, a claimant must show that his impairments meet or equal one of the impairments in the Listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App.1. The regulations state that an ALJ may, but is not required to, call a medical expert to address the severity of impairments and whether they meet a listing. *See* 20 C.F.R. §§ 404.151527(f)(2)(iii), 416(f)(2)(iii). A medical expert's primary task is to explain medical problems in terms understandable to the ALJ who is a layman. *Richardson v. Perales,* 402 U.S. 389, 408 (1971). Whether a claimant's impairment meets the requirements of a listed impairment is usually more a question of medical fact than opinion because most of the requirements are objective and simply a matter of documentation, but the issue is still ultimately reserved for the Commissioner. SSR 96-5, 1996 WL 374183, at 3. Thus, medical experts are most frequently used in complex medical situations. *Id.* This instant case is not complex and involves only a paralyzed left arm and minor schizoaffective disorder.

Plaintiff argues that the ALJ should have obtained testimony from a medical expert regarding whether Plaintiff's condition met a listing as specified in the Social Security Act. In this case, the ALJ looked at the totality of the evidence in depth and used his medical understanding to determine that Plaintiff's impairments were severe but did not meet or equal a listing. (Tr. 13-14). The ALJ considered that the state agency medical consultant opined that Plaintiff had a mild restriction in activities of daily living, moderate difficulties in social

11

functioning, mild difficulties with regard to concentration, pace, or persistence, and no episodes of decompensation.  (Tr. 14, 235).  State agency physicians are recognized as experts in Social Security disability evaluations.  20 C.F.R. §§ 404.1527(f)(2)(I), 416.927(f)(2)(I).  Moreover, the ALJ considered that a mental status consultative examination revealed that Plaintiff had a Global Assessment Functioning (GAF) score of 55, which is consistent with a moderate impairment of social or occupational functioning.  (Tr. 17, 223).  As evidenced by the ALJ's decision, he had a solid grasp of the medical evidence, so a medical expert was not necessary in this case.

Even if the ALJ did obtain a medical expert, an ALJ, as the trier of fact, is not bound to a finding by a psychological consultant or other program physician or psychologist with respect to whether an individual's impairment(s) is equivalent in severity to any of the impairments in the Listings.  SSR 96-6p, 1996 WL 374180, at 3.  In fact, the ALJ has sole responsibility for determining a claimant's disability status, or whether a claimant's impairments meet or equal a listing.  *Martinez v. Charter*, 64 F.3d 172, 176 (5th Cir. 1990).  The determination of a disability is not a medical opinion entitled to deference, but a legal conclusion within the Commissioner's scope of authority.  *Barnhart*, 326 F.3d at 620.

The claimant has the burden of proving that his impairment or combination of impairments meets or equals a listing.  *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).  "For a claimant to show that his impairment matches a [L]isting, it must meet all of the specified medical criteria.  *Sullivan v. Zebley,* 439 U.S. 521, 520 (1990).  No matter how severe it may be, an impairments does not qualify if it exhibits only some of the specified criteria.  *Id.*

Here, the ALJ gave great deference to the medical records.  In terms of the claimant's alleged pain and limitations, the record reveals that the claimant failed to follow-up on recommendations made by the treating doctor, which suggests that the symptoms may not have

been as serious as has been alleged in connection with the application and this appeal.   Also, there is evidence that the claimant has not been entirely compliant in taking prescribed medications, which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this case.  (Tr. 217).

The ALJ's decision to consult a medical expert is a discretionary one.  *Haywood v. Sullivan,* 888 F.2d 1463, 1467-68 (5th Cir. 1989).  The ALJ may ask for and consider the opinion of a medical expert on the nature and severity of an impairment or its equivalence to any listed impairment if the ALJ feels it is necessary; however, the final responsibility for deciding whether an impairments meets or equals a listed impairment is reserved to the Commissioner.  *Id. See also* 20 C.F.R. §§ 416.926(e), 416.927(e).  In this case, there is very little evidence indicating that Plaintiff's severe impairments or combination of impairments met or equaled an impairment in the listing.  The two pages of evidence that demonstrates Plaintiff is unable to work is drastically overwhelmed by evidence demonstrating that his social functioning is only moderately affected.  (Tr. 372-373).

Also, pursuant to SSR 96-6p, when an ALJ determines that an individual's impairments are not equivalent to any Listing, a DDT (Disability Determination and Transmittal) or other similar form satisfies the requirements that the ALJ receive expert opinion evidence on the issue into the record.  SSR 96-6p, 1996 WL 374180, at 3.  Here, the evidence in the record before the ALJ includes such documents.  (Tr. 46-49).   Therefore, the ALJ complied with this duty under SSR 96-6p. *Barnes v. Astrue,* No. H-07-4377, 2008 WL 5348225, at 7-9 (S.D. Tex. Dec. 22, 2008) (unpublished).

In this case, Plaintiff does not refer to any specific impairment in the Listing that is applicable; additionally, he has presented very little evidence suggesting that any of his

13

impairments or combination of impairments meet or equal a listed impairment.  Furthermore, the record does not indicate a likelihood or even reasonable possibility that medical equivalence would be found based on Plaintiff's impairments or combination of impairments.  The ALJ sufficiently identified the rationale underlying his adverse finding at step 3, and Plaintiff has not demonstrated that he suffered substantial prejudice as a result of any alleged deficiencies in the ALJ's discussion.

Therefore, Plaintiff's foregoing arguments are without merit and, accordingly, the court overrules them.

### C.  The ALJ properly considered the Plaintiff's credibility

Credibility determinations, such as that made by the ALJ in this case in connection with Plaintiff's subjective complains of disability and pain, are generally within the province of the ALJ to make.  *Greenspan v. Shahala,* 38 F.3d 232, 237 (5th Cir. 1994) ("In sum, the ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and weight their opinions accordingly.'") (quoting *Scott v. Heckler,* 770 F.2d 482, 485 (5th Cir. 1985)), *cert denied,* 514 U.S. 1120 (1995).  *See also Harper v. Sullivan,* 887 F.2d 92, 97 (5th Cir. 1989) (claim of disability less credible when no physician on record has stated that claimant was physically disabled).

The ALJ noted in his decision that he considered "all the symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of....SSR 96-7p."  (Tr. 15).  The ALJ found in his report that the objective findings "fail to provide strong support for the claimant's allegations of disabling symptoms and limitations.  More specifically, the medical findings do not support the existence of limitations greater than those reported in the residual functional

capacity...the evidence shows that the claimant admitted to being physically capable of performing work and could continue benefitting from effective interventions to stabilize mood, heighten self-awareness, sustain sobriety, and increase knowledge of coping strategies." (Tr. 16). The ALJ noted that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in social functioning, mild difficulties with concentration, persistence, or pace, and no episodes of decompensation. (Tr. 14, 235).

Credibility determinations are generally entitled to great deference, and in this case, the court finds that the ALJ's credibility determination is supported by substantial evidence and clearly articulated by the ALJ. Specifically, the ALJ clearly made a credibility finding when he stated: "claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not generally credible." (Tr. 18). The ALJ also considered the lack of medical opinions provided stating Plaintiff was disabled. (Tr. 18).

The ALJ considered Plaintiff's non-compliance with his medication in determining his credibility. (Tr. 18). For instance, as the ALJ noted, an examination on October 22, 2007, revealed that Plaintiff was not entirely compliant with prescribed medications because he "found [he] could not drink on it." (Tr. 18, 272). A claimant's non-compliance with treatment is a proper factor for the ALJ to consider in assessing credibility. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). Also, the ALJ considered Plaintiff's treatment history in assessing his credibility. (Tr. 18). As the ALJ pointed out, Plaintiff failed to follow-up on recommendations made by his treating doctor. (Tr. 18, 273). Lack of treatment contradicts Plaintiff's complaints. *Fraga v. Bowen*, 810 .2d 1296, 1303 (5th Cir. 1987).

Additionally, the ALJ considered Plaintiff's return to work after his alleged onset date. (Tr. 12, 18). Plaintiff's earning records show $6,500 in 2007, which contradicts his alleged

disability since January 2007. (Tr. 12, 23). Moreover, as the ALJ pointed out, treatment notes dated July 10, 2007, describe Plaintiff as "actively seeking employment." (Tr. 18, 184). The Fifth Circuit has held that working for several years despite impairments which were claimed to be disabling supports a finding of not disabled. *Vaughan v. Shahala*, 58 F.3d 129, 131 (5th Cir. 1995).

There is substantial evidence to support the ALJ's credibility assessment, and the ALJ clearly articulated his assessment in the report. The credibility determination was the ALJ's role, and he is entitled to deference. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (the ALJ has the responsibility to resolve questions of credibility).

## V. Conclusion

Substantial record evidence supports the ALJ's decision the Plaintiff was not disabled. Therefore, it is ORDERED that Plaintiff's Motion for Summary Judgment is DENIED, and the decision of the Commissioner is AFFIRMED.

Signed at Houston, Texas, this 28th day of June, 2010.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE